### Archibald v. Archibald.

*Divorce—Desertion—Residence—Change of—Act of May 8, 1919, P. L. 164.*
1. Where a husband changes his residence from a consideration of convenience or business advantage, it is the duty of his wife to accompany him, if he provides a home for her; but where he merely lives part of the time over week-ends at a hotel, and at most offers to provide a home if she will come, which she refuses to do, this does not constitute desertion on her part.
2. A traveling salesman who leaves a former residence and makes his "headquarters" at another town, boarding there at certain hotels, which from time to time he visited over week-ends, receiving mail there and keeping some of his clothes there, should not be considered as having established a new residence there for the purpose of divorce.

Rule to show cause why divorce should not be granted. C. P. Lancaster Co., April T., 1926, No. 28.

*Willis G. Kendig,* for libellant.

LANDIS, P. J., June 26, 1926.—This is an application for divorce on the ground of desertion. The libellant is a traveling salesman, and, as he says, was married in 1900 and lived with his wife in Philadelphia until about three

### Archibald v. Archibald.

years ago. She is living there at the present time. Lancaster County is in his territory, and he, therefore, selected it as the most logical place to live, but his wife refused to come, and upon this he bases his charge of desertion. He never secured a home here, though he says he offered to do so, but when he was in this locality he stopped at either the Hotel Pennsylvania or the Stevens House, in this city. Until about July, 1924, he was at times at the former place, and since that time he says he was practically every week or two at the Stevens House, and he claims his residence there. He said he was on the assessor's list of the 4th Ward, but the list was not presented, and it is not contended that he ever voted. Some of the witnesses testified that he had his "headquarters" in Lancaster, and that he came here over "week-ends and the like," but just how often he was actually in the city was not proven.

In Beck v. Beck, 163 Pa. 649, it was decided that "a husband has a right to change his home if his business, his comfort or his convenience requires it, if he provides another suitable place of residence, and if his wife refuses to accompany him to the new home without cause, her refusal constitutes desertion for which a divorce will be decreed;" and in Monahan v. Auman, 39 Pa. Superior Ct. 150, Henderson, J., delivering the opinion of the court, said: "The fact that a husband has gone to another place than that in which he has recently been living does not create a presumption of desertion. He may lawfully change his residence. The wisdom of such a change is not a subject for the judgment of the court. There would be a serious abridgment of personal liberty if this right were subject to legal review. Where a husband changes his residence from a consideration of convenience or business advantage, it is, generally speaking, the duty of his wife to accompany him, where he provides a home for her, and her refusal so to do without legal excuse amounts to desertion." Here, however, the libellant never did provide a new home in Lancaster for his wife. At most, he offered to do so, and she refused to come. Therefore, this case does not fall within the authorities, and the facts do not, in my judgment, make out a case of desertion.

Under the Act of May 8, 1919, § 1, P. L. 164, it is provided that: "If any person hath been or shall be injured as aforesaid, the husband or the wife may exhibit his or her petition or libel to the judges of the Court of Common Pleas of the proper county where the injured party resides. . . ." Did, then, the libellant have a residence in this county? He says he boarded at certain hotels which from time to time he visited, and that he received mail here and kept some of his clothes. How much time he spent here does not appear, and he certainly never voted here. He seems to have been only a transient visitor, coming and going as suited his convenience. In Sheldon v. Forsman, 17 Lanc. Law Rev. 85, it was said: "Residence is made up of facts and intentions; that is, an abode with the intention of remaining. In White v. Brown, 1 Wal., Jr., 217, Judge Grier says: 'The original domicile or *forum originis*, as it is called, is to prevail until the party has not only acquired another but has manifested and carried into execution an intention of abandoning his former domicile and taking another as his sole domicile. A man cannot be considered a vagabond or person without any domicile, for the domicile of origin is not abandoned until a new one has been intentionally and actually acquired. In the case before us the intention of the defendant appears to be altogether of an indefinite character, depending upon the circumstances which might be developed after he went into another state as to the final course which he might pursue." In Dulin v. Dulin, 33 Pa. Superior Ct. 4, it was decided that: "On a libel for divorce, it must affirmatively appear that there has been a clear intention on the part of the libellant to abandon a former residence and to make this state

Archibald v. Archibald.

a permanent one with domiciliary intent, coupled with an actual *bona fide* residence for one year within the Commonwealth previous to the filing of the petition or libel. Each requirement is essential and all must combine to warrant the courts in making a decree in divorce."

In my judgment, this standard has not been met, and for this and the former reason, the application for divorce must be refused. Divorce refused.

From George Ross Eshleman, Lancaster, Pa.