Grace, Appellant, v. Grace.

Argued March 23, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ., (ROSS, J., absent).

*Samuel S. Gray, Jr.,* with him *Eastburn & Gray,* for appellant.

No appearance was made nor brief submitted for appellee.

OPINION BY FINE, J., July 15, 1949:

The libellant seeks a divorce from his wife in this uncontested action on the ground of desertion. The court below adopted the recommendation of the master that a decree in divorce be refused and dismissed the libel. The sole issue on this appeal is whether there was a consentable separation or a wilful and malicious desertion by the wife. We disagree with the conclusion

of the learned court below that the separation was consentable and we find the separation constituted a wilful and malicious desertion by the respondent, warranting an award of a divorce to the libellant.

Four days after the parties married on January 12, 1942, the husband entered the army and remained in the service until his discharge in October, 1945. During that service, excepting of course the three year period spent in the European theatre of operations, the libellant secured frequent weekend furloughs which were passed with his wife in Bucks County, either in the home of his or her parents. The parties lived together in the home of libellant's father for three weeks after his discharge from the army and immediately preceding the separation which occurred on or about November 1, 1945. Apparently the marital relations prior to the separation were entirely harmonious and very pleasant. Any excusatory cause for the separation or for her withdrawal from his home must be gleaned from the libellant's testimony for, as already observed, respondent did not testify.

We have repeatedly said that desertion which entitles an injured or innocent spouse to a divorce is "an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years": *Ingersoll v. Ingersoll,* 49 Pa. 249, 251. See section 10, "The Divorce Law" of May 2, 1929, P. L. 1237, as amended, 23 PS §10. Guilty intent is manifested where, without cause or consent, either party withdraws from the residence of the other. "The malice of the desertion arises from its being the perverse act of the one, in refusing the performance of the matrimonial obligations and duties, which the other has the legal right to require": *Kelly v. Kelly,* 51 Pa. Superior Ct. 603, 608.

"The withdrawal by the wife from the common domicile and cessation of marital relations imposed upon her the burden of proof to establish by the preponderance of the evidence facts that would entitle her to a decree

of divorce (citing cases) or that the separation was by consent": *Ewing v. Ewing,* 140 Pa. Superior Ct. 448, 449, 14 A. 2d 149. "The defense of a separation with the consent of libellant is affirmative and the burden of proof to establish that fact by satisfactory evidence is on the respondent (citing cases)": *Hagen v. Hagen,* 159 Pa. Superior Ct. 539, 541, 49 A. 2d 193; *Tatem v. Tatem,* 164 Pa. Superior Ct. 307, 312, 64 A. 2d 514. However, the reason of the rule ceases where the libellant by his own evidence shows such consent to a separation as to negative a wilful and malicious desertion by the respondent. By such evidence the libellant establishes a defense to his own action as much as if the same facts were proved by the respondent.

In concluding that consentable separation was established by the evidence of the libellant himself the learned court below erred. The germane testimony bearing on the separation is substantially as follows: ". . . one evening she said she didn't love me any more and she said she was leaving me. I told her that it was all right, that she could leave, and when she decided whichever way she wanted it, that I would still have a home for her and still be waiting for her. That was three weeks after I arrived from the other side after three years on the other side. . . . I told her that maybe being away three years caused a little trouble at heart, that maybe after she had been away for a few days or so she would come back again. . . . About two or three months, and I tried to reconcile with her again and told her still if she changed her mind I would still be waiting and still have a home prepared for her. . . . Well, she still didn't want to come back with me. She thought we should call it quits, and she still didn't love me, and I told her to think it over a while and still it hasn't materialized. . . . BY MR. GRAY: Q. You were trying then— if I understand it correctly, you were trying to be nice to her so that she would return? A. That is right.

Q. You didn't want to make any scene or anything?
A. I didn't want to make any scene, just trying to see that she would come back with me again."

The foregoing testimony rather clearly shows the libellant was hopeful his wife's departure would be a temporary one. He did not consent to a permanent separation; he did not contemplate that status at the time of the separation. He consented to nothing more than a temporary separation and such consent was only given because, recognizing the futility of presenting dissuasive reasons to her immediate departure, he deemed his acquiescence to a temporary separation, if conveyed to her as amicably and pleasantly as circumstances suggested or permitted, might avert a permanent separation developing from a short separation. Moreover, he thought a gracious attitude by him might pave the way to an earlier and unembarrassing reëstablishment of marital relations. Subsequent events dissipated his optimism but that is not good reason to penalize him for honest and sincere errors of judgment, free of guile and fabrication. To say that he should have discerned the full nature of her act, i. e., the permanency of her separation, is to require of the libellant in the circumstances the exercise of powers of clairvoyance. "His [acquiescence] indicated not consent, which implies volition, but passive submission to an unhappy misfortune over which he had no control. If he consented to anything, it was to nothing more than a temporary separation (citing cases)": *Westfall v. Westfall,* 148 Pa. Superior Ct. 477, 480, 25 A. 2d 614. "A consent to a temporary separation, as here, does not bar a libellant from obtaining a divorce for desertion if, in fact, there was an abandonment of a common habitation, without sufficient consent, for the statutory period": *Hagen v. Hagen,* 159 Pa. Superior Ct. 539, 541, 49 A. 2d 193, supra.

The respondent had no reason to leave; libellant's consent thereto implies no volition but rather a supplicatory resignation to and a reluctant acknowledgment of a supposedly temporary marital breach. His consent was given not as much in aid of a temporary separation or in approbation of that status as it was offered as an entreaty for its early termination. The evidence therefore does not approximate the requirement of the law that there must be proof of affirmative conduct, amounting to participation in the separation, to defeat a divorce in this type of desertion cases. No inference can fairly be drawn that he was as willing to have his wife go as she was willing to leave. *Mertz v. Mertz,* 119 Pa. Superior Ct. 538, 180 A. 708. Cf. *Barnes v. Barnes,* 156 Pa. Superior Ct. 196, 40 A. 2d 108. He was willing that she return at any time and terminate the separation which she alone had charted as the permanent status, unknowingly to him.

*Croll v. Croll,* 60 Pa. Superior Ct. 415, upon which the lower court heavily relied is wholly dissimilar to this action on the facts, is easily distinguishable and does not support a refusal of divorce. The libellant is entitled to the relief sought and a decree in divorce should be awarded.

The decree of the court below is reversed, the libel is reinstated, and the record is remitted to the court below with direction to enter a decree of absolute divorce.